UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, A FEDERALLY CHARTERED SAVINGS AND LOAN ASSOCIATION, )<br><br>Plaintiff, )<br>v. )<br><br>MIGUEL NARANJO, et al., )<br><br>Defendant. | FILED: SEPTEMBER 2, 2008<br>08CV4961<br>JUDGE ST. EVE<br>No. MAGISTRATE JUDGE KEYS<br>Judge EDA<br><br>(Formerly No. 08 CH 26666<br>Circuit Court of Cook County) |

**NOTICE OF REMOVAL
TO THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

The federal defendant, UNITED STATES OF AMERICA, respectfully states as follows:

1.     The federal defendant has been made a party to the civil action now pending in the Circuit Court of Cook County, Illinois, entitled Second Federal Savings and Loan Association of Chicago, a federally chartered savings and loan association v. Miguel Naranjo, et al., Case No. 08 CH 26666.

2.     If the United States has waived its sovereign immunity to be sued, such waiver would be pursuant to 28 U.S.C. Section 2410.

3.     This case is removable to the United States District Court for the Northern District Court of Illinois, Eastern Division, pursuant to 28 U.S.C. Sections 1442 and 1444.

4.     A copy of the process and pleadings served upon the federal defendant, UNITED STATES OF AMERICA, are attached hereto.

5.     No previous application for removal in this case has been made.

WHEREFORE, the UNITED STATES OF AMERICA respectfully requests that this case be removed to this Court as a properly removed case, and entered upon the docket of this Court and, upon filing a copy of this notice with the Clerk of Circuit Court of Cook County, Illinois, the said state court shall proceed no further unless this case is remanded.

Respectfully submitted,

/s/ Joel Nathan

JOEL NATHAN (ARDC 2019566)
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-8449

08CV4961
JUDGE ST. EVE
MAGISTRATE JUDGE KEYS
EDA

STATE OF ILLINOIS     )
                       ) ss
COUNTY OF COOK     )

## THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

SECOND FEDERAL SAVINGS AND LOAN   )
ASSOCIATION OF CHICAGO, a federally   )
chartered savings and loan association,   )
                                   )
        Plaintiff,                 )
                                   )
       vs.                     )
                                   )
MIGUEL NARANJO; ELIDORO YNIGUEZ;   )
ANDRES NARANJO; MARIA NARANJO;   )
GILBERTO ORTIZ; ASSOCIATES HOME   )
EQUITY SERVICE, INC., by reason of a   )
mortgage recorded as document #99590619 to  )
secure a note in the sum of $50,000.00 as assigned )
by document #00300269; UNITED STATES OF )
AMERICA; UNKNOWN OWNERS AND   )
NONRECORD CLAIMANTS,               )
                                   )
        Defendants.             )

Case No. **08CH26666**

PLEASE SERVE DEFENDANT:

SEE ATTACHED
SERVICE LIST

RECEIVED 2008 AUG -5 A 10: 54
UNITED STATES ATTORNEY
NORTHERN DISTRICT
CHICAGO, ILLINOIS

## SUMMONS

To the Defendant:

     **YOU ARE SUMMONED** and required to file an Answer in this case, or otherwise file your Appearance in the office of the Clerk of this Court (located in the Richard J. Daley Center, Room No. 802, Chicago, Illinois 60602) within 30 days after service of this Summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

To the officer:

     This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so indorsed. This Summons may not be served later than 30 days after its date.

                 WITNESS    **JUL 2 4 2008**

DOROTHY BROWN
CLERK OF CIRCUIT COURT

_____
Clerk of Court

Name:         Russell R. Custer, Jr., Esq..
                  LILLIG & THORSNESS, LTD.
Attorneys for Plaintiff
Address:      1900 Spring Road., Suite 200
City:          Oak Brook, IL   60523
Telephone:   630/571-1900
Atty No.:      11196

Cook County Service Lis

Mr. Joel Nathan, Esq.
United States Attorney's Office
Northern District Illinois
219 S. Dearborn Street
5th Floor
Chicago, IL  60604


Miguel Naranjo
5419 S. Rockwell
Chicago, IL  60632


Elidoro Yniguez
5419 S. Rockwell
Chicago, IL  60632


Andres Naranjo
5419 S. Rockwell
Chicago, IL  60632


Maria Naranjo
5419 S. Rockwell
Chicago, IL  60632


Gilberto Ortiz
5419 S. Rockwell
Chicago, IL  60632

STATE OF ILLINOIS      )
                          ) ss
COUNTY OF COOK      )

## THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, a federally chartered savings and loan association, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MIGUEL NARANJO; ELIDORO YNIGUEZ; ANDRES NARANJO; MARIA NARANJO; GILBERTO ORTIZ; ASSOCIATES HOME EQUITY SERVICE, INC., by reason of a mortgage recorded as document #99590619 to secure a note in the sum of $50,000.00 as assigned by document #00300269; UNITED STATES OF AMERICA; UNKNOWN OWNERS AND NONRECORD CLAIMANTS, )<br><br>Defendants. ) | Case No. **08 C H 26666**<br><br>**PLEASE SERVE DEFENDANT:**<br><br>**SEE ATTACHED<br>SERVICE LIST** |

## SUMMONS

To the Defendant:

    **YOU ARE SUMMONED** and required to file an Answer in this case, or otherwise file your Appearance in the office of the Clerk of this Court (located in the Richard J. Daley Center, Room No. 802, Chicago, Illinois 60602) within 30 days after service of this Summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

To the officer:

    This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so indorsed. This Summons may not be served later than 30 days after its date.

                    WITNESS    JUL 2 4 2008

                              DOROTHY BROWN
                              CLERK OF CIRCUIT COURT  Clerk of Court

|  |  |
|---|---|
| | Russell R. Custer, Jr., Esq.. |
| Name: | LILLIG & THORSNESS, LTD. |
| | Attorneys for Plaintiff |
| Address: | 1900 Spring Road., Suite 200 |
| City: | Oak Brook, IL  60523 |
| Telephone: | 630/571-1900 |
| Atty No.: | 11196 |

<u>Cook County Service Lis</u>

Mr. Joel Nathan, Esq.
United States Attorney's Office
Northern District Illinois
219 S. Dearborn Street
5th Floor
Chicago, IL  60604


Miguel Naranjo
5419 S. Rockwell
Chicago, IL  60632


Elidoro Yniguez
5419 S. Rockwell
Chicago, IL  60632


Andres Naranjo
5419 S. Rockwell
Chicago, IL  60632


Maria Naranjo
5419 S. Rockwell
Chicago, IL  60632


Gilberto Ortiz
5419 S. Rockwell
Chicago, IL  60632

File No. 564-1003                                                  Loan No. 100051731

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE
(see Compliance Notice attached)

STATE OF ILLINOIS          )
                           ) ss
COUNTY OF COOK             )

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

**SECOND FEDERAL SAVINGS AND LOAN**      )
**ASSOCIATION OF CHICAGO**, a federally  )
chartered savings and loan association,  )
                                         )
                   Plaintiff,            )
     v.                                  )      Case No. 08CH26666
                                         )
**MIGUEL NARANJO; ELIDORO YNIGUEZ;**     )
**ANDRES NARANJO; MARIA NARANJO;**       )
**GILBERTO ORTIZ; ASSOCIATES HOME**      )
**EQUITY SERVICE, INC.**, by reason of a )
**mortgage recorded as document #99590619 to** )
**secure a note in the sum of $50,000.00 as assigned** )
**by document #00300269; UNITED STATES OF** )
**AMERICA; UNKNOWN OWNERS AND**          )
**NONRECORD CLAIMANTS**                  )
                                         )
                   Defendants.           )

**COMPLAINT FOR MORTGAGE FORECLOSURE**

NOW COMES Plaintiff, **SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION OF
CHICAGO** a corporation authorized to do business in the State of Illinois, by and through Lillig &
Thorsness, Ltd., its attorneys, and complaining of the abovementioned Defendants, **MIGUEL
NARANJO; ELIDORO YNIGUEZ; ANDRES NARANJO; MARIA NARANJO; GILBERTO
ORTIZ; ASSOCIATES HOME EQUITY SERVICE, INC.**, by reason of a mortgage recorded as
document #99590619 to secure a note in the sum of $50,000.00 assigned by document #00300269;
**UNITED STATES OF AMERICA; UNKNOWN OWNERS AND NONRECORD CLAIMANTS**,
states as follows:

1.      Plaintiff files this Complaint to Foreclose the mortgage, trust deed, or other conveyance

in the nature of a mortgage hereinafter described (the "Mortgage"), and joins the above-named parties as

Defendants.

2.     That attached hereto as Exhibit "A" is a copy of the Mortgage, and attached hereto as Exhibit "B" is a copy of the Note secured by the Mortgage, both the Mortgage and Note are made a part hereof as though fully set forth in this paragraph.

3.     Information concerning Mortgage:

    a)     Nature of instrument:  Mortgage

    b)     Date of Mortgage:     June 18, 1998.

    c)     Name or Names of Mortgagee, Trustee or Grantee in Mortgage:

        SECOND FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO

    d)     Name of Mortgagor:

        MIGUEL NARANJO, GILBERTO ORTIZ and ELIDORO YNIGUEZ

    e)     Date and place of recording:

        Recorded in the Office of the Recorder of Deeds in Cook County, Illinois, on June 26, 1998.

    f)     Identification of Recording:  Recorded as document #99590619

    g)     Estate conveyed:     Fee simple

    h)     Amount of original indebtedness:     $124,200.00

    i)     Legal description and address of mortgaged premises:

        The South 10 feet of Lot 117, Lot 118 (except the South 5 feet thereof) in Kennedy's Park Addition, a Subdivision of the South East 1/4 of Section 12, Township 38 North, Range 13, East of the Third Principal Meridian, in Cook County, Illinois.

        Commonly known as: 5419 S. Rockwell, Chicago, Illinois  60632

    j)     Statements as to defaults and amount now due:

        The mortgage loan indebtedness maturity date ballooned for payment in full on June 5, 2008, and the mortgagor has been unable or refuses to pay off the

2

mortgage indebtedness due the Plaintiff. The balance due on the Note and the Mortgage is $58,014.58, plus interest, costs and fees. The per diem interest accruing on the indebtedness is $12.49.

The mortgagor has conveyed the mortgaged premises without the consent of the Plaintiff in violation of the mortgage covenants.

k)    Name or names of present owner or owners of said premises:

MARIA NARANJO and GILBERT ORTIZ

l)    Names of persons in addition to said owners, but excluding any non-record claimants as defined in the Illinois Mortgage and Foreclosure Act as heretofore and hereafter amended, who are joined as Defendants and whose equitable rights to redeem are sought to be barred:

UNKNOWN OWNERS AND NONRECORD CLAIMANTS

m)    Name or names of person claimed to be personally liable for deficiency, if a deficiency decree is prayed for:

MIGUEL NARANJO, GILBERTO ORTIZ and ELIDORO YNIGUEZ

n)    Capacity in which Plaintiff brings this suit: As holder of the Note secured by the Mortgage sought to be foreclosed herein.

o)    Plaintiff seeks inclusion in the Judgment of Plaintiff's attorneys' fees, costs and expenses, pursuant to the applicable provisions of the Mortgage and Note described herein.

p)    Facts in support of redemption period shorter than the longer of:
(i)  7 months from the date the Mortgagor has either been served with Summons or by publication, or has otherwise submitted to the jurisdiction of the Court, or
(ii) 3 months from the entry of the Judgment of Foreclosure, if sought (here indicate whether based upon the real estate note being residential, abandonment, or real estate value less than 90% of amount owed, etc.)

q)    Statement that the right of redemption has been waived by all owners of redemption, if applicable.

r)    Facts in support of a request for appointment of mortgagee in possession or for appointment of receiver, and identity of such receiver, if sought.

None sought at this time.

3

      s)      Offer to Mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale, if sought.

      None.

4.     The United States of America claims an interest in the mortgaged premises by reason of a Lis Pendens filed on January 4, 2005, regarding a Grand Jury Investigation Case # 04 GJ 0228, and forfeiture proceedings filed against the mortgaged property under case #04 CR 1072 in the Federal District Court for the Northern District of Illinois.

5.     Plaintiff avers that in addition to the persons designated by name, herein, there are other persons who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, and some part thereof, in this Complaint, described as tenants in possession;  that the name of each such other persons interested in this action is unknown to Plaintiff, and upon diligent inquiry cannot be ascertained, and all such persons are therefore made parties-Defendant to this action by the name and description of UNKNOWN OWNERS.

6.     Plaintiff further says that there are no NONRECORD CLAIMANTS, of which  Plaintiff has actual notice; that the names and present or last known places or residence of any NONRECORD CLAIMANTS against the real estate and premises described in the Complaint filed in this cause are unknown to Plaintiff and to this deponent or Plaintiff's attorneys; that this paragraph is included in this Complaint in order to bar as to all NONRECORD CLAIMANTS the equitable right to redeem from the Mortgage sought to be foreclosed in this cause without making said NONRECORD CLAIMANTS parties to this action.

4

**WHEREFORE**, Plaintiff prays as follows:

1.  For a foreclosure of said Mortgage with a shortened redemption period.

2.  For an order granting a shortened redemption period.

3.  For a judicial sale of the land secured by the Mortgage for payment of the indebtedness.

4.  For a personal deficiency judgment against MIGUEL NARANJO, GILBERTO ORTIZ, and ELIDORO YNIGUEZ.

5.  For the appointment of a receiver pendente lite or mortgagee in possession.

6.  For the inclusion in the Judgment of Foreclosure all Plaintiff's attorney's fees, costs and expenses.

> SECOND FEDERAL SAVINGS AND LOAN
> ASSOCIATION OF CHICAGO, by and through its
> attorneys, LILLIG & THORSNESS, LTD.
>
> By: _____
>          Russell R. Custer, Jr., Esq.

5

STATE OF ILLINOIS      )
                            ) ss
COUNTY OF COOK       )

      Russell R. Custer, Jr., being first duly sworn on oath, deposes and says that he is one of the attorneys for Plaintiff herein, a corporation organized and doing business in the State of Illinois; that he is the authorized agent in this behalf for Plaintiff; that he has read the foregoing Complaint by him and on its behalf subscribed and knows the contents thereof; and that the same is based upon information and belief as to which allegations affiant believes them to be true.

                                      Russell R. Custer, Jr., Esq.

Subscribed and sworn to before me
this 23rd day of _July_ , 2008.

_Loral DeRose_
Notary Public

OFFICIAL SEAL
LORAL DEROSE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/25/10

Russell R. Custer, Jr., Esq.
Lillig & Thorsness, Ltd.
Attorneys for Plaintiff
1900 Spring Road, Suite #200
Oak Brook, IL  60523
630/571-1900
Fax 630/571-1042
Attorney No. 11196

6

Attached to Complaint for Mortgage Foreclosure

## NOTICE IN COMPLIANCE
## WITH THE
## FAIR DEBT COLLECTION PRACTICES ACT (the Act)
## 15 U.S.C. SECTION 1601, AS AMENDED

1.  The amount of the debt is as stated in Paragraph 3(J) of the Complaint to Foreclose Mortgage attached hereto.

2.  The Plaintiff, as named in the attached Summons and Complaint, is the creditor to whom the debt is owed, or is the servicing agent for the creditor to whom the debt is owed.

3.  The debt described in the Complaint attached hereto, and evidenced by the copy of the Mortgage Note attached hereto, will be assumed to be valid by the creditor's law firm, unless the debtor, within thirty days after receipt of this notice, disputes in writing the validity of the claim or some portion thereof.

4.  If the debtor notifies the creditor's law firm in writing, within thirty days of the receipt of this notice, that the debt, or any portion thereof, is disputed, the creditor's law firm will obtain a verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

5.  The name of the original creditor is set forth in the Mortgage and Note attached hereto.  If the creditor named as Plaintiff in the attached Summons and Complaint is the not the original creditor, and if the debtor makes a written request to the creditor's law firm within thirty days from the receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6.  The Complaint to Foreclose Mortgage to which this notice is attached is an attempt to collect a debt and any information obtained from you may be used for that purpose.

7.  Written requests should be addressed to the "Fair Debt Collection Clerk – File #564-1003" at Lillig & Thorsness, Ltd., 1900 Spring Road, Suite #200, Oak Brook, IL 60523.

*******************

7

WHEN RECORDED MAIL TO

J27/0054 48 001 Page 1 of    8
1998-06-26 10:22:30
Cook County Recorder         67.50

SECOND FEDERAL SAVINGS AND LOAN ASSN
3960 WEST 26TH STREET
CHICAGO ILLINOIS 60623

Loan Number : 5173-1



———————————[SPACE ABOVE THIS LINE FOR RECORDING DATA]———————————

THE TERMS OF THIS LOAN CONTAIN
PROVISIONS WHICH WILL REQUIRE A BALLOON PAYMENT AT MATURITY

# MORTGAGE

THIS MORTGAGE (" Security Instrument") is given on   June 18, 1998
The mortgagor is MIGUEL NARANJO, A BACHELOR and GILBERTO ORTIZ, A
BACHELOR and ELIDORO YNIGUEZ, A BACHELOR

("Borrower"). This  Security Instrument is given to

SECOND FEDERAL SAVINGS AND LOAN ASSN
which is organized and existing under the laws of  UNITED STATES OF AMERICA , and whose address is
3960 WEST 26TH STREET, CHICAGO, ILLINOIS 60623

("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED TWENTY-FOUR THOUSAND TWO HUNDRED DOLLARS AND
00/100
Dollars (U.S.$     124,200.00  ). This debt is evidenced by Borrower's note dated the same date as
this Security Instrument ("Note"), which provides for  monthly payments, with the full debt, if not paid
earlier, due  and payable on   June  5, 2003          . This Security Instrument secures
to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions
and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7
to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage,
grant and convey to Lender the following described property located in
STATE OF ILLINOIS, COOK

County, Illinois:

THE SOUTH 10 FEET OF LOT 117, LOT 118 (EXCEPT THE SOUTH 5 FEET THEREOF)
IN KENNEDY'S PARK ADDITION, A SUBDIVISION OF THE SOUTH EAST 1/4 OF
SECTION 12, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN COOK COUNTY, ILLINOIS

PERMANENT INDEX TAX # 19 12 428 008   VOL387

which has the address of      5419  S ROCKWELL ST                    CHICAGO
                                        [Street]                                    [City]

Illinois       60632        ("Property Address");
                  [Zip Code]

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 9/90
Eastern
Software ITEM 1876 (9012)
CORPORATION                              (page 1 of 6 pages)



EXHIBIT

"A"

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of th   property. All replacements and additions shal   o be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
   1. Payment of Principal and Interest; Prepayment and Late Charges.  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
   2. Funds for Taxes and Insurance.  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums.  These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.
   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the escrow items.  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for all sums secured by this Security Instrument.
   If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency.  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.
   Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.  If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.
   3. Application of Payments.  Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the note.
   4. Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any.  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.
   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.
   5. Hazard or Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender

Form 3014  9/90 (page 2 of 6 pages)

requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award of claim for damages, direct or consequential, in connection with any

Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – Uniform Covenants 9/90  (page 3 of 6 pages)

condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, required immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of:(a) 5 days (or such other period as applicable law may

Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT -- Uniform Covenants 9/90  (page 4 of 6 pages)

specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS: Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Waive of Homestead. Borrower waives all right of homestead exemption in the Property.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    _Miguel naranjo_ (Seal)
                                      MIGUEL NARANJO    -Borrower

_Miguel naranjo_                      _Gilberto Ortiz_ (Seal)
ELIDORO YNIGUEZ                       GILBERTO ORTIZ    -Borrower
_endiendually en as attorney_
_in fact for Elodoro naniguez_        M-N-AS city in
                                      FACT for
                                      G-O     M-N    EY

STATE OF ILLINOIS,                    Cook            County ss:

I, the undersigned                                    , a Notary Public in and for said county and state,

do hereby certify that   MIGUEL NARANJO* and GILBERTO ORTIZ** and ELIDORO YNIGUEZ***
* & ** & *** A BACHELOR
                                   , personally known to me to be the same person(s) whose name(s)

subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that   they   signed

and delivered the said instrument as   their   free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this   18th   day of   June   , 1998.

My Commission expires: 5-13-02

_Elizabeth E Roman_
                                                        Notary Public

┌─────────────────────────────┐
│       "OFFICIAL SEAL"        │
│     ELIZABETH E. ROMAN       │
│  Notary Public, State of Illinois │
│  My Commission Expires 5/13/02 │
└─────────────────────────────┘

This instrument was prepared by
AGATHA J. STEINKE
(Name)
3960 WEST 26TH STREET
(Address)
CHICAGO ILLINOIS

Form 3014  9/90 (page 6 of 6 pages)

98549862

# BALLOON RIDER
### (Conditional Right To Refinance)

Loan Number : 5173-1

    THIS BALLOON RIDER is made this   18th   day of June 1998 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to
SECOND FEDERAL SAVINGS AND LOAN ASSN
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

5419 S ROCKWELL ST, CHICAGO, IL 60632
[Property Address]

    The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

    **ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

## 1.  CONDITIONAL RIGHT TO REFINANCE
    At the maturity date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of   June   5,  2008        , and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Sections 2 and 5 below are met (the "Conditional Refinancing Option"). If those conditions are not met, I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

## 2.  CONDITIONS TO OPTION
    If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (1) I must still be the owner and occupant of the property subject to the Security Instrument (the "Property"); (2) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (3) no lien against the Property (except for taxes and special assessments not yet due and payable) other than that of the Security Instrument may exist; (4) the New Note Rate cannot be more than 5 percentage points above the Note Rate; and (5) I must make a written request to the Note Holder as provided in Section 5 below.

## 3.  CALCULATING THE NEW NOTE RATE
    The New Note Rate will be a fixed rate of interest equal to the Federal National Mortgage Association's required net yield for 30-year fixed rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time

MULTISTATE BALLOON RIDER - Single Family - Fannie Mae Uniform Instrument

■Eastern
Software
CORPORATION
Form 3180  12/89
GREATLAND ■

ITEM 6549L1 (9612)                    *(Page 1 of 2 pages)*                    To Order Call: 1-800-530-9393☐ Fax 616-791-1131

of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

## 4. CALCULATING THE NEW PAYMENT AMOUNT

Provided the New Note Rate as calculated in Section 3 above is not greater than 5 percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current, as required under Section 2 above), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest payment every month until the New Note is fully paid.

## 5. EXERCISING THE CONDITIONAL REFINANCING OPTION

The Note Holder will notify me at least 60 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon the Federal National Mortgage Association's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership, occupancy and property lien status. Before the Maturity Date the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount and a date, time and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any, and any reasonable third-party costs, such as documentary stamps, intangible tax, survey, recording fees, etc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Balloon Rider.

_Miguel Naranjo_ _____ (Seal)
MIGUEL NARANJO                -Borrower

_Gilberto Ortiz_ _____ (Seal)
GILBERTO ORTIZ                -Borrower

_Eliodoro Yniguez_ _____ (Seal)
ELIODORO YNIGUEZ                -Borrower

_individually and as_

_attorney in fact_ _____ (Seal)
                                -Borrower

_for Eliodoro Yniguez_

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

Form 3180  12/89

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

ITEM 6549L2 (9612)        *(Page 2 of 2 pages)*

# BALLOON NOTE
### (Fixed Rate)

Loan Number : 5173-1

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

June 18, 1998          CHICAGO          ILLINOIS
[Date]                 [City]           [State]

5419 S ROCKWELL ST, CHICAGO, IL 60632
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $          124,200.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
SECOND FEDERAL SAVINGS AND LOAN ASSN
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of     7.750%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**
(A)   Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the     5th    day of each month beginning on  July  5, 1998
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
June  5, 2003          , I still owe amounts under this Note, I will pay those amounts in full on that date,
which is called the "Maturity Date."
I will make my monthly payments at
3960 WEST 26TH STREET
CHICAGO ILLINOIS 60623
                                              or at a different place if required by the Note Holder.

(B)   Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $          889.79

MULTISTATE BALLOON NOTE (FIXED RATE) - Single Family - FNMA Uniform Instrument

Form 3260  3/87
GREATLAND ■

ITEM 4049L1 (9511)          (Page 1 of 3 pages)          To Order Call:

■Eastern
Software
CORPORATION


EXHIBIT
"B"

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)   Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D)   No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)   Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of the Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _Miguel Naranjo_  (Seal) -Borrower | _Gilberto M. Ortiz_  (Seal) -Borrower |
| MIGUEL NARANJO | GILBERTO ORTIZ |
| _Miguel Naranjo_  (Seal) -Borrower | _____ (Seal) -Borrower |
| ELIDORO YNIGUEZ | |
| _(individually and as attorney in fact for Elidoro Yniguez)_  (Seal) -Borrower | _____ (Seal) -Borrower |
| | *[Sign Original Only]* |

Form 3260  3/87

GREATLAND ▪
ITEM 4049L3 (9511)          *(Page 3 of 3 pages)*          To Order Call: 1-800-530-9393 □ Fax 616-791-1131

Loan Number : 5173-1

# BALLOON NOTE ADDENDUM
### (Conditional Right to Refinance)

THIS BALLOON NOTE ADDENDUM is made this  18th  day of      June 1998
and is incorporated into and shall be deemed to amend and supplement the Balloon Note made by the undersigned (the
"Borrower") in favor of  SECOND FEDERAL SAVINGS AND LOAN ASSN

(the "Lender") and dated as of even date herewith
(the "Note"). The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date."

I (the Borrower) understand the Lender may transfer the Note, the related Mortgage, Deed of Trust or Deed to Secure
Debt (the "Security Instrument") and this Addendum. The Lender or anyone who takes the Note, the Security Instrument and
this Addendum by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and
Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the
Note):

## 1. CONDITIONAL RIGHT TO REFINANCE
At the maturity date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan
("New Loan") with a new Maturity Date of  June  5, 2008            and with an interest rate equal to the
"New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Sections 2 and 5 below
are met (the "Conditional Refinancing Option"). If those conditions are not met, I understand that the Note Holder is
under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the
Note from my own resources or find a lender willing to lend me the money to repay the Note.

## 2. CONDITIONS TO OPTION
If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the
Maturity Date. These conditions are: (1) I must still be the owner and occupant of the property subject to the Security
Instrument (the "Property"); (2) I must be current in my monthly payments and cannot have been more than 30 days late
on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (3) no lien against the Property
(except for taxes and special assessments not yet due and payable) other than that of the Security Instrument may exist;
(4) the New Note Rate cannot be more than 5 percentage points above the Note Rate; and (5) I must make a written
request to the Note Holder as provided in Section 5 below.

## 3. CALCULATING THE NEW NOTE RATE
The New Note Rate will be a fixed rate of interest equal to the Federal National Mortgage Association's required
net yield for 30-year fixed rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one
percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate").
The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives
notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note
Holder will determine the New Note Rate by using comparable information.

## 4. CALCULATING THE NEW PAYMENT AMOUNT
Provided the New Note Rate as calculated in Section 3 above is not greater than 5 percentage points above the
Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount
of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid
interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my
monthly payments then are current, as required under Section 2 above), over the term of the New Note at the New Note
Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest
payment every month until the New Note is fully paid.

MULTISTATE BALLOON NOTE ADDENDUM - Single Family - Fannie Mae Uniform Instrument                    Form 3266 12/89



5. **EXERCISING THE CONDITIONAL REFINANCING OPTION**

The Note Holder will notify me at least 60 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon the Federal National Mortgage Association's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership, occupancy and property lien status. Before the Maturity Date the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount and a date, time and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any, and any reasonable third-party costs, such as documentary stamps, intangible tax, survey, recording fees, etc.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Balloon Note Addendum.

_Miguel Naranjo_ (Seal)
MIGUEL NARANJO  -Borrower

_Gilberto N. Ortiz_ (Seal)
GILBERTO ORTIZ  -Borrower

_Miguel Naranjo_ (Seal)
ELIDORO (YNIGUEZ  -Borrower

_(Seal)_
-Borrower

_endobidically and as attorney_ (Seal)
_en fact for Eliodoro_  -Borrower
_Yniguez_

_(Seal)_
-Borrower

*[Sign Original Only]*

Form 3266 12/89